COBB, Judge.
The appellee herein, Dennis Higginbot-ham, purchased an automobile dealership *348 from H.D. and Betty Nieburger on June 1, 1976. The Nieburgers leased to Higginbot-ham the land and building where the dealership operated. Paragraphs 2 and 3 of the lease provided:
2. The Lessee covenants and agrees that he will at his expense maintain the interior and exterior of said premises and will maintain and keep in good working order the plumbing and electrical wiring and heating and air conditioning of said premises and will during continuance of this lease pay all utility charges incurred in his use and occupancy of said premises.
3. The Lessor hereby covenants and agrees that he will during the continuance of this lease keep structural elements of the building in good and substantial repair at his expense.
Subsequently, H.D. Nieburger died and the realty became a trust asset administered by Southeast Banks Trust Company, N.A., which has been the landlord of the premises since 1980. In 1982 Higginbot-ham sued the trustee because of a leaky roof, seeking relief through specific performance and declaratory judgment. The trial judge found that the two paragraphs quoted above, when read in conjunction, created an ambiguity sufficient to allow the admission of parol evidence to ascertain the intent of the parties.
The evidence at trial showed that both H.D. Nieburger and the trustee, as landlords, had sent men on occasion to patch the roof. Both parties introduced expert testimony from architects as to the meaning of the term “structural elements” in paragraph 3 of the lease. Both architects agreed that a roof is not considered a structural element of a building in architectural terminology.
Higginbotham testified, over objection, that he understood paragraph 3 to mean that the Nieburgers would take care of the walls and the roof of the building. The son of the Nieburgers, who was present during the lease negotiations with Higginbotham, testified that his parents did not agree to maintain the roof. He further testified that the term “structural elements” as used in paragraph 3 had been discussed and it was intended to encompass only the walls and floor of the building and nothing more. He further testified that the roof repairs made by his parents had been done simply to avoid controversy.
The trial judge found that the greater weight of the evidence indicated that the intent of the parties at the time of execution of the lease had been that the lessors should repair, and if necessary replace, the roof during the term of the lease. He also found that the evidence showed that the roof had reached the point where it could no longer be repaired and had to be replaced. Final judgment was entered against the trustee directing it to replace the roof. This appeal ensued.
The real question in this case is whether the term “structural elements” is truly ambiguous or merely necessitates definition because of its technical nature. As pointed out by the Florida Supreme Court in the early case of Hinote v. Brigman, 44 Fla. 589, 33 So. 303, 305 (1902):
[Wjhere words or phrases used in a contract have acquired a definite meaning generally or by local usage, or, where used in reference to certain things or commodities, have acquired a definite meaning among those dealing with such things or commodities, arid the language used in the writing is such that the court does not understand it, oral testimony is admissible to explain the meaning of such words or phrases. [Cites omitted.]
In Chase Manhattan Bank v. First Marion Bank, 437 F.2d 1040, 1048 (5th Cir.1971), it was stated that evidence to “show the meaning of technical terms, and the like, is not regarded as an exception to the ... [parol evidence rule], because it does not contradict or vary the written instrument, but simply places the court in the position of the parties when they made the contract, and enables it to appreciate the force of words they used in reducing ... [the agreement] to writing.” In accordance with this reasoning, the expert testimony of the two architects defining the phrase “structural elements” was properly *349 admitted. Both experts defined a structural element to mean that part of a building which supports it; both excluded a roof from this definition.
Given this clear definition of the term, there is no conflict between paragraph 2 and paragraph 3 of the contract — and no ambiguity. It is beyond reasonable dispute that a roof is part of the exterior of the leased premises, and therefore encompassed by the express language of paragraph 2 covering the responsibilities of the lessee, Higginbotham. We believe the trial court erred in its finding of an ambiguity in this case, and its admission of parol testimony to vary, as opposed to explaining, the meaning of the contract. Merely because a party has erroneously construed the meaning of a contract does not prevent the court from applying the true construction where the meaning of the words used is clear. People’s Savings Bank & Trust Co. v. Landstreet, 80 Fla. 853, 87 So. 227 (1920).
We find the trial court erred in its conclusion that the roof (i.e., the exterior waterproofing membrane above the supporting rafters) of a building is a “structural element,” and in entering judgment for the plaintiff below.
REVERSED.
PRANK D. UPCHURCH, Jr., and CO-WART, JJ., concur.