**CAPITOL FUNDS, INC., a/k/a Skyland Investment Company, Inc., Plaintiff-Appellee, Cross-Appellant,**

v.

**ARLEN REALTY, INC., Defendant-Appellant, Cross-Appellee.**

No. 84–8336.

United States Court of Appeals, Eleventh Circuit.

March 28, 1985.

Herbert D. Shellhouse, Robert W. Webb, Jr., Atlanta, Ga., Mitchell W. Berger, Chattanooga, Tenn., for defendant-appellant, cross-appellee.

William H. Blalock, Jr., Gainesville, Ga., for plaintiff-appellee, cross-appellant.

Before KRAVITCH and JOHNSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

## I. BACKGROUND

A tenant, Capitol Funds, Inc., filed a declaratory judgment action asking the district court to construe its repair, replacement, and maintenance obligations under the terms of a long-term commercial lease. The landlord, Arlen Realty, Inc., counterclaimed for breach of contract, seeking damages and termination of the leasehold. The district court granted summary judgment for the landlord on the tenant's claim and for the tenant on the landlord's counterclaim. The landlord filed an appeal on the counterclaim and the tenant filed a cross-appeal on the original claim.

The disputed provision of the 20-year shopping center lease entered in June 1968 is the maintenance and repair provision, § 7(a) which reads as follows:

Tenant shall, at all times during the term, and at its own cost and expense, put, keep, replace and maintain in thorough repair and good, safe and substantial order and condition all buildings and improvements on the demised premises at the commencement of the term and thereafter erected on the demised premises, or forming a part thereof, and their full equipment and appurtenances, both inside and outside, structural and nonstructural, extraordinary and ordinary, and shall repair the same at all times, keep the same in thorough repair and good, safe and substantial order and condition, ordinary wear and tear, obsolescence excepted; and shall use all reasonable precaution to prevent waste, damage or injury. Tenant shall also, at its own cost and expense, put, keep, replace and maintain in thorough repair and good order and safe condition, and free from dirt, snow, ice, rubbish and other obstructions or encumbrances, the sidewalks, areas, coal chutes, sidewalk hoists, railings, gutters and curbs in front of, in and about, and adjacent to the demised premises.

The landlord sent a construction consultant onto the property in June 1982 because of serious concerns about the condition of the shopping center. The consultant produced a report detailing the deteriorating conditions at the Center. A second report was prepared by the consultant in October 1982. Based on these two reports, the landlord notified the tenant of termination of the contract in September 1982 and, shortly thereafter, the tenant filed this action to determine whether it was charged by the contract with remedying the defaults identified.

One year earlier, the landlord had filed suit against the tenant in the Georgia state courts. The state court complaint alleged a breach of contract by the tenant, not only for its failure to pay rent, but also for its violation of the maintenance and repair provisions of the lease.[1] It sought a judgment for past due rent and for termination of the

---

1. The allegation of breach of the maintenance and repair provisions stated:

(b) Defendant is allowing the leased premises to deteriorate and is failing to maintain in thorough repair and good, safe and substantial order and condition the demised premises.

In turn, based on this allegation, and on an allegation of past due rents, the landlord prayed: "(3) that the court eject and dispossess defendant from the premises."

lease. The testimony in the state court, however, focused on the failure to pay rent, although there were some mentions of repair problems. The state court suit resulted in a judgment for the tenant. The court entered its judgment based on the report of findings of fact and conclusions of law by an auditor appointed by the court. The auditor based his decision on the fact that the landlord had consistently, without objection, accepted rent payments long past due. He did not mention the failure to maintain the property in proper repair.

## II. ISSUES

There are two issues for decision by this Court:

1. Did the district court err in granting summary judgment to the tenant on the landlord's counterclaim for damages for breach on the basis of res judicata?

2. Did the district court err in granting summary judgment to the landlord in the tenant's declaratory judgment action holding that the contract placed upon the tenant the duty to maintain the shopping center in tenantable condition?

## III. DISCUSSION

### A. *Res Judicata*

The district court granted summary judgment to the tenant on the landlord's counterclaim for damages for breach of the duty to repair on the basis of res judicata because of the prior state court action. The parties agree that Georgia substantive law applies on this issue. The landlord complains that this ruling deprives it of any remedy for violations of § 7(a) of the lease occurring after the 1981 decision, unless it can make the impossible evidentiary showing that the defects complained of did not exist in 1981. The landlord contends the court's ruling was erroneous for three reasons.

First, the landlord argues that the record did not establish that all maintenance deficiencies raised by the counterclaim could have been litigated in the state court ac-

tion. It points out that the failure to repair issue, although included in the state court complaint, was not pursued at trial. It notes that the tenant has the burden of proof on the affirmative defense of res judicata, *McAfee v. Martin*, 211 Ga. 14, 83 S.E.2d 605 (1954), and that on summary judgment the tenant must prove that there is no material dispute of fact, resolving all inferences against the tenant, *United States v. One 1944 Steel Hull Freighter*, 697 F.2d 1030 (11th Cir.1983). The landlord argues that the district court incorrectly applied this standard by inferring that the incidents of disrepair raised by the counterclaim were the same as those raised in the state claim. It argues that the covenant to repair could be breached in numerous ways, *e.g.*, by a failure to repair the roof in one year and the parking lot in the next. It contends that many incidents of breach raised in the counterclaim were not raised in state court.

Second, the landlord argues that the record establishes a different breach from those that could have been litigated in state court. The landlord argues that the breach of the duty to replace is a different cause of action from the duty to repair. It contends that the tenant's expert's affidavit admits that only now have the roof and parking lot deteriorated to the point that they need to be replaced; therefore, the replacement issue could not have been litigated earlier.

Third, the landlord argues that the record establishes that a different time period is covered by this counterclaim than by the state court action. It contends that § 7(a) of the lease imposes a continuing duty to repair and is thus in the category of contracts requiring continuous performance and susceptible to multiple breaches so that an action for breach will not bar suits for later occurring breaches. *Isaacs v. Davies*, 68 Ga. 169 (1881). It argues that this counterclaim seeks to enforce the tenant's liability for repairs for the period after the state court suit. It notes that the landlord's expert's inspection occurred subsequent to the state court suit.

The tenant relies on O.C.G.A. § 9–12–40 which provides as follows:

A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put into issue or *which, under the rules of law, might have been put in issue* in the court wherein judgment was rendered until the judgment is reversed or set aside. (Emphasis added.)

The tenant argues first that the failure to repair was actually litigated below. It notes that the allegations in the two complaints were virtually identical, that one of the landlord's witnesses in the state court testified as to the lack of repairs, and that the landlord's attorney relied on § 7(a) to support admission of this testimony. Second, the tenant argues that res judicata bars issues that could have been litigated below.

■ Without considering the tenant's first argument, we conclude that the trial court was correct in deciding that the issues now raised by the landlord could have been raised at the original trial "by the use of proper diligence." *Gladden v. Cobb*, 80 Ga. 11, 63 S.E.2d 163 (1887), and because of the presumption that the conditions in 1981 remained the same until 1982 under the Georgia Supreme Court decision in *Durham v. Crawford*, 196 Ga. 381, 26 S.E.2d 778 (1943).

Significantly, the complaint in the present case alleged a breach of maintenance and repair, without mentioning a word relating to replacement, in the identical language used in the state court complaint. Here, the complaint alleged in its counterclaim as follows: "The plaintiff has materially breached the terms of its lease by *failing and refusing to keep the premises in thorough repair and good, safe, and substantial order and condition.*"

In the state court suit, the complaint relating to maintenance and repair was as follows: "(b) Defendant is allowing the leased premises to deteriorate and is *failing to maintain in thorough repair and good, safe and substantial order and condition the demised premises.*" It must be noted that not a word is said in either complaint with respect to a duty to "replace."

It would seem that any contention that the landlord could not litigate the same issues under the state court pleading that it sought to litigate under the present suit in the federal district court borders on the frivolous.

■ With respect to the landlord's contention that before the trial court could enter a summary judgment on the issue of res judicata, there was a burden of proof on the tenant to show that conditions in 1982 remained unchanged from 1981, it is clear that this burden of proof issue must be resolved in favor of the tenant by the Georgia Supreme Court decision in *Durham v. Crawford, supra*. In that case, the Court was dealing with a contention that res judicata applied in a case brought after a previous decision and the Court stated the general rule to be

that a former judgment binds only as to the facts in issue and events existing at the time of such a judgment, and does not prevent a re-examination even of the same questions between the same parties, if in the interval the material facts have so changed or such new events have occurred as to alter the legal rights or relations of the litigants.

The Court then stated, however: "In the *absence of evidence to the contrary, the facts as they existed at the time of the former judgment would be presumed to continue,*" citing 34 C.J. 905, § 1313; 30 Am.Jur. 943, § 2; and cit. *Durham v. Crawford*, 196 Ga. at 387 (1943). Such presumption, of course, must be rebutted by the party who wishes not to be bound by it. In this case, this would, of course, be the landlord.

We conclude, therefore, that the trial court properly dismissed the landlord's complaint on the basis of res judicata.

## B. *Contract Construction*

We now come back to the original complaint in which the tenant sought an interpretation of the lease that would relieve it from the duty to replace any of the facili-

ties on the premises that might become necessary. The trial court rejected this contention and placed the responsibility for all matters contained in paragraph 7(a), *supra*, upon the tenant. The court's final sentence in its opinion stated: "Looking at the contract as a whole the court is forced to conclude that it is Capitol's duty to replace the parking lot and roof when and if necessary...." It is the tenant's appeal from that order which we now consider.

The net effect of the two judgments of the trial court is that the landlord may no longer claim any obligation on the part of the tenant to remedy either by proper maintenance or by replacement any defect in the premises that had existed prior to the filing of the action in the state court in August, 1981, but that the tenant was bound to perform all of the requirements of paragraph 7(a) of the contract from that time forward.

Both parties agree that such questions of contract construction are ordinarily questions of law. O.C.G.A. § 23–2–1. The tenant argues that § 7(a) gives the tenant the obligation to maintain the continuing operation of the center but not to replace substantial portions of the premises which wear out notwithstanding ordinary maintenance. It points out that the words "ordinary" and "excepted" were added to § 7(a) by pen and ink changes at the time of closing of the contract and that they must be given special consideration. Claiming that these words mean that the tenant is not liable even to replace items that wear out during the tenancy, which was for a total term of 20 years, the tenant argues that to fail to give effect to the pen and ink changes would give a windfall to the landlord who gets the premises back after 20 years in better condition than when leased.

The landlord argues that while a simple covenant to repair contemplates only normal maintenance, § 7(a) is more extensive in that it requires a tenant to "put" the premises in "thorough repair" and to "replace ... all buildings and improvements ... and their full equipment and structures." It also expressly requires the tenant to rebuild structures destroyed by fire or other causes, to make "structural altera-tions" necessary to comply with ordinances, and is a "net lease" allocating all burdens of ownership, such as taxes and insurance to the tenant. The landlord points to the provisions of paragraph 7(c) and § 35(i) of the lease. Section 7(c) states that: "Landlord shall in no event be required to make any alterations, rebuildings, replacements, changes, additions, improvements or repairs during the term." Section 35(i) of the lease states:

> The within lease is intended and agreed to be a net lease to the Landlord with the exception of its obligation to make the security deed or note payments, both principal and interest, on the existing notes or any refinancing placed on the premises by the Landlord as hereinbefore specified. All other obligations, of every kind and nature, in connection with the operation, maintenance, repair, management, preservation and care, shall be obligations of the Tenant to be taken care of, provided for and paid by the Tenant.

We agree with the trial court that, until the handwritten change was made in the typed contract, it was completely unambiguous and clearly placed the burden on the tenant to perform all necessary repairs and improvements in line with the original state of the property to make it reasonably useful for the tenant and that it was only after the insertion of the provision "ordinary wear and tear, obsolescence excepted" that it became ambiguous. The ambiguity resulted from the fact that if literally construed, the introduction of the new language made it unnecessary for the tenant even to maintain ordinary repairs necessary to keep the property in usable condition.

■ In solving this ambiguity, the court considered the contract as a whole, giving particular attention to paragraphs 7(c) and 31(i). The trial court construed the contract as requiring the tenant to maintain the property that made it serviceable and in good repair. We quote the language of the trial court with which we are in accord:

Contrary to Capitol's contentions, the interpretation adopted does not fail to afford weight or meaning to the handwritten changes in Section 7(a). The most reasonable and logical interpretation of the exception for obsolescence and ordinary wear and tear is simply that the tenant is not required to keep the premises in like-new or nearly new condition, but rather is required merely to keep it serviceable and in good repair. Assuming, for example, that at the start of the lease the premises was newly painted, Capitol would not be obligated to repaint it annually, or to repaint simply because the paint had begun to fade. Nor would Capitol be required to replace serviceable equipment, such as furnaces or air conditioners, merely because they are no longer in like new condition or because more efficient models are available. Of course, Capitol would not be obligated to replace where repair would be sufficient. It is clear, however, that under the terms of the contract, when viewed as a whole, Capitol has assumed responsibility for maintaining the premises in a serviceable—or, to adopt the language in *Bell House* [*Bell House v. Wilkins*, 34 Ga.App. 285, 125 S.E. 797 (1925) ]—tenantable, condition. To analogize to tort theory, Capitol assumed the risk under the contract that major elements of the premises, such as the roof, would require replacement—rather than repair—before the term of the lease expired. The court cannot rewrite the contract to eliminate risks assumed by competent parties.

The judgments of the trial court are AFFIRMED on direct appeal and on cross-appeal.