**REGION 8 FOREST SERVICE TIMBER PURCHASERS COUNCIL; Hankins Lumber Company, Inc.; Hood Industries, Inc.; and Hunt Plywood Company, Inc.**

v.

**John E. ALCOCK, in his official capacity as Regional Forester for Region 8 of the United States Forest Service; F. Dale Robertson, in his official capacity as Regional Director of Region 4 of the United States Fish and Wildlife Service; and Manuel Lujan, in his official capacity as Secretary of the United States Department of the Interior.**

Civ. No. 1:89–cv–2741–ODE.

United States District Court,
N.D. Georgia,
Atlanta Division.

April 23, 1990.

Alexander Stephens, Clay, IV, Mary Lillian Walker and Kilpatrick & Cody, Atlanta, Ga., and Steven P. Quarles, Thomas R. Lundquist and John A. Macleod, Crowell & Moring, Washington, D.C., for plaintiffs.

Daniel A. Caldwell, III, Asst. U.S. Atty., N.D. Georgia, Atlanta, Ga., for defendants.

## ORDER

ORINDA D. EVANS, District Judge.

This case under the Endangered Species Act, 16 U.S.C. §§ 1531, *et seq.* ("Species Act)", the National Forest Management Act, 16 U.S.C. §§ 1604, *et seq.* ("Forest Act"), and the National Environmental Policy Act of 1969, 42 U.S.C. § 4332 ("Environmental Act") is before the court on the Sierra Club's motion to intervene, the Defendants' motions for a protective order and to dismiss or in the alternative for a stay, the Plaintiffs' motion for leave to file a supplemental brief, and the Defendants' motion to file a reply to this supplemental brief.

This case arises from the actions of the Region 8 Forest Service in restricting timber cutting within ¾ of a mile of a colony site of red cockaded woodpeckers. The red cockaded woodpecker is considered an endangered species under the Species Act. Through a process of consultation specified in the Species Act and the Forest Act, the Forest Service originally arrived at a plan to manage the red cockaded woodpecker population. That plan was defined in the 1985 Wildlife Habitat Management Handbook ("Woodpecker Handbook"). Plaintiffs allege that sometime in the late 1980s, Defendants discontinued full implementation of the procedures described in the Woodpecker Handbook, and thereafter adopted a new policy to protect the woodpeckers. Defendants assert that their new policy was in response to reports of unstable or declining woodpecker populations. In any event, on March 27, 1989 and then again on June 26, 1989, the Forest Service adopted a new "Policy on Cutting Within ¾ Mile of RCW Colonies On Existing Timber Sale Contracts."

Plaintiffs, a group of timber purchasers, assert that Defendants' new timber policy violates their economic, informational, and public participation rights under the Species Act, the Forest Act, and the Environmental Act. Specifically, Plaintiffs assert that Defendants failed to comply with § 7(a)(2) of the Species Act by not entering into "consultation" with the Fish and Wildlife Service before altering a policy approved by formal consultation and affecting an endangered species. Plaintiffs also assert that Defendants violated the Forest Act and its implementing regulations by failing to obtain an Environmental Impact Statement before "significantly" altering a forest plan and by failing to allow for a period of public review of the new plan. Finally, Plaintiffs assert that Defendants violated the Environmental Act and its implementing regulations by failing to issue an Environmental Impact Statement or Environmental Assessment prior to adopting the new ¾ mile policy.

*The Motion to Dismiss or For a Stay*

Defendants move to dismiss based on seven grounds. First and foremost, Defendants assert that under the Contract Disputes Act, 41 U.S.C. §§ 601, *et seq.,* Plaintiffs' claims are subject to the exclusive jurisdiction of the United States Claims Court. Second, Defendants assert that to the extent Plaintiffs are claiming rights to future timber sales, they fail to state a claim due to the fact that timber sales are completely discretionary. Third, Defendants assert that Plaintiffs' claims regarding the failure of the Forest Service to implement the Woodpecker Handbook should be dismissed because Plaintiffs

failed to comply with the notice requirements of the Species Act. Fourth, Defendants assert that Plaintiffs do not have standing to bring their Species Act and Environmental Act claims because Plaintiffs' injuries are not even arguably within the zone of interests sought to be protected or regulated by these statutes. Fifth, Defendants assert that Plaintiffs have waived their rights to pursue claims related to the ¾ mile policy because Plaintiffs agreed to modify the contracts that were subject to the policy. Sixth, Defendants assert that Plaintiffs' Species Act claims are barred by Plaintiffs' failure to recognizably raise these claims during the administrative proceeding. Finally, Defendants would have this court dismiss or stay these proceedings in light of the impending new Forest Service Guidelines.

Plaintiffs respond that this is not a contract action subject to the Contract Disputes Act. Rather, assert Plaintiffs, the focus of this action is the alleged statutory violations of the Species Act, the Forest Act, and the Environmental Act. With regard to the claim for lost future timber sales, Plaintiffs assert that they have made no such claim, but that the Forest Service's alleged "covenant" to sell timber and the decreased future timber sales that the ¾ mile policy necessarily involves serve as support for their claims of statutory violations. Plaintiffs further maintain that a letter dated September 1, 1989 provided the notice required under the Species Act, and that even if that letter was insufficient, the claim should be permitted as an exercise of federal question jurisdiction over a claim for failure to follow procedures under the Administrative Procedure Act. Plaintiffs also assert that they have standing to assert their Species Act and Environmental Act claims. According to Plaintiffs, the economic harm they have suffered and the denial of their informational and participational rights satisfy the Article III requirement of injury traceable to illegal conduct that can be redressed by order of this court. Plaintiffs also contend that the prudential standing test does not apply to the Species Act, and that even if it does apply, Plaintiffs have prudential standing due to

the "legal wrong" they have allegedly suffered from the change in their timber contracts, due to the manner in which the Species Act "regulates" Plaintiffs' businesses, and due to the alleged denial of Plaintiffs' informational and participational rights. Plaintiffs reject Defendants' waiver-of-rights theory on the ground that no rights were intentionally and knowledgeably waived, and allegedly could not have been waived without language in their contracts to that effect. Plaintiffs also maintain that they raised all their claims at the administrative level, and that even if they did not, exhaustion was not required because it would have been futile. Finally, Plaintiffs assert that this case is not moot, and will not become moot just because the Forest Service plans to change its policy as: (1) the new Guidelines allegedly will not eradicate the pre–1990 effects of the current policy on timber cutting, (2) the new policy will be temporary and will allegedly be issued without an environmental impact statement, and (3) the alleged practice of denying informational and participational rights will still exist and be capable of repetition.

■ The court addresses the grounds for dismissal seriatim. The way they are pled, Plaintiffs' claims are not subject to the exclusive jurisdiction of the Claims Court. Although the Contract Disputes Act eliminated "U.S. district court jurisdiction ... from Government contract claims", S.Rep. No. 1118, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.Code Cong. & Ad.News 5235, 5244, Plaintiffs' carefully pled complaint does not allege contract claims. Unlike the Plaintiffs in *Management Science America, Inc. v. Pierce,* 598 F.Supp. 223 (N.D. Ga.1984), *aff'd,* 778 F.2d 792 (11th Cir. 1985), Plaintiffs in this case assert statutory causes of action and seek remedies that are separate from any potential contract claims. Given the rights that Plaintiffs allege they seek to enforce, Plaintiffs' claims are not within the exclusive jurisdiction of the Claims Court. *See North Side Lumber Co. v. Block,* 753 F.2d 1482, 1485–86 (9th Cir.1985), *cert. den.,* 474 U.S. 919, 106 S.Ct. 248, 88 L.Ed.2d 256 (1985); *Mega-*

*pulse, Inc. v. Lewis,* 672 F.2d 959, 971 (D.C.Cir.1982); *National Helium Corporation v. Morton,* 455 F.2d 650, 654 (10th Cir.1971).

Defendants' second ground for dismissal, that Plaintiffs have no right to future timber sales, is moot. Plaintiffs have not asserted a claim for denial of future timber sales and would not be able to assert such a claim in this court.

■ Defendants' fourth ground for dismissal is that Plaintiffs do not have standing to sue under the Environmental Act and the Species Act. In order to have standing to bring this action, Plaintiffs must meet the minimal Article III requirement of personally suffering an actual or threatened injury due to Defendants' allegedly illegal conduct. Plaintiffs' injury must be fairly traceable to Defendants' actions and redressable by order of this court. *Valley Forge College v. Americans United,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). In addition, Plaintiffs must meet whatever prudential standing requirements the courts have imposed on parties suing under the Environmental Act or the Species Act.

■ Plaintiffs maintain that they have established injury under Article III by asserting the loss of timber volume under their current contracts, the loss of future timber volume, and the increased timber harvesting costs incident to Defendants' ¾ mile policy. These injuries, however, are injuries to Plaintiffs' contractual rights. As Plaintiffs' carefully pled complaint recognizes, in order for this court to exercise jurisdiction over Plaintiffs' claims, the claims must be based on noncontractual injuries. Because the violation of any "right" to steady timber volumes and costs can only arise out of the Forest Act or Plaintiffs' contracts, Plaintiffs may not allege these contractual injuries to establish standing under the Environmental Act or

the Species Act. *Spectrum Leasing Corp. v. United States,* 764 F.2d 891, 894 (D.C. Cir.1985); *Megapulse,* 672 F.2d at 968–69; *Management Science,* 598 F.Supp. at 226. Thus, the only injuries asserted by Plaintiffs that may confer standing under the Environmental Act and the Species Act are Plaintiffs' alleged interests in "maintaining stable [woodpecker] populations and following scientifically defensible [woodpecker] strategies" and the alleged denial of Plaintiffs' "informational and participational interests". Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss, pg. 26.

■ With regard to the Environmental Act, it is clear that Plaintiffs' environmental, informational, and participational interests fail to satisfy the prudential standing requirements imposed by the courts. "[A] right to specific information under [the Environmental Act] has so far been recognized for standing purposes only when the information sought relates to environmental interests that [the Environmental Act] was intended to protect.... [The Environmental Act's] concern is to inform other governmental agencies and the public about the environmental consequences of its proposed activities, not to inform them about all possible consequences of an agency's action." *Competitive Enterprise Institute v. National Highway Safety Traffic Administration,* 901 F.2d 107, 123 (D.C.Cir.1990); *see also, Organized Fishermen of Florida v. Watt,* 590 F.Supp. 805, 815 (S.D.Fla.1984), *aff'd* 755 F.2d 1544 (11th Cir.1985), *cert. den.,* 476 U.S. 1169, 106 S.Ct. 2890, 90 L.Ed.2d 978 (1986). In the instant case, "plaintiff[s'] interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit" under the Environmental Act. *Clarke v. Securities Industry Association,* 479 U.S. 388, 399, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987)[1].

---

**1.** Plaintiffs assert that they have "regulated industry" standing under the Environmental Act. However, no actions taken under the authority of the Environmental Act restrict Plaintiffs' right to cut trees, nor does the Environmental

Act itself restrict that right. Thus, Plaintiffs are not regulated under the Environmental Act.

Even if Plaintiffs were regulated under the Environmental Act, however, Plaintiffs' only claim would be in the Claims Court. Plaintiffs assert that they are regulated in the sense that

■ With regard to Plaintiffs' standing to sue under the Species Act, the court finds that Plaintiffs' informational and participational interests meet the minimal requirements of Article III [2]. This does not end the inquiry, however. The court must also determine whether the prudential standing test applies under the Species Act and, if it does, whether Plaintiffs meet the requirements of that test.

The Eleventh Circuit has not spoken directly on this issue. Eighth Circuit precedent, however, clearly does not require plaintiffs to meet prudential standing requirements for claims asserted solely under the Species Act. *Defenders of Wildlife, Friends of Animals v. Hodel*, 851 F.2d 1035, 1039 (8th Cir.1988). In *Defenders* the Eighth Circuit reasoned that be-

cause the Species Act provides that "any person may commence a civil suit on his own behalf—to enjoin any person, including the United States and any other governmental instrumentality or agency ... who is alleged to be in violation of any provision of [the Species Act] or regulation issued under the authority thereof", 16 U.S.C. § 1540(g)(1)(A), Congress thereby "eliminate[d] the prudential limitations by legislation." *Defenders* at 1039. *See also, National Wildlife Federation v. Coleman*, 400 F.Supp. 705, 710 (S.D.Miss.1975), *rev'd on other grounds*, 529 F.2d 359 (5th Cir. 1976), *cert. denied*, 429 U.S. 979, 97 S.Ct. 489, 50 L.Ed.2d 587 (1976) [3].

By way of contrast, the District of Columbia Circuit has applied the prudential standing test to suits brought under the

---

the amount of timber they are permitted to cut under their timber contracts has been reduced, while the cost of cutting this timber has been increased. This is clearly nothing more than an attempt to get into this court a complaint that is proper only before the Claims Court. To the extent that Plaintiffs' claims are based on their contracts, the claims belong in the Claims Court. *See Megapulse*, 672 F.2d at 968–69; *Management Science*, 598 F.Supp. at 226.

Plaintiffs also assert that their right to steady future harvesting costs and their right to have a certain amount of timber offered for sale in the future has been regulated by the ¾ mile policy. Plaintiffs, however, have no right to steady harvesting costs, *cf. Georgia Pacific Corporation v. County of Mendocino*, 357 F.Supp. 380 (N.D.Cal. 1973) (counties may tax timber companies' possession of timber within the county), *aff'd sub nom., International Paper Co. v. County of Siskiyou*, 515 F.2d 285 (9th Cir.1974); *Sierra Club v. Hardin*, 325 F.Supp. 99, 120 (D.Alaska 1971) (Secretary may condition export of timber from Alaska on primary manufacture within Alaska), nor do they have "a right to harvest timber from the [Region 8] National Forest. No such right is conferred by statute or regulation." *Intermountain Forest Industry Association v. Lyng*, 683 F.Supp. 1330, 1340 (D.Wyo.1988). Plaintiffs' argument that 16 U.S.C. § 1604(i) gives them a right to steady future timber volumes proves too much. If Plaintiffs have such a right, it would extend to violations of current land plans and current contracts. As discussed above, Plaintiffs may not obtain an injunction against such harms. Furthermore, Plaintiffs' complaints about future timber volumes are nothing more than complaints about future harvesting contracts. Again, such complaints belong in the Claims Court.

However, even if the Forest Act did confer upon Plaintiffs rights relating to future timber volumes, the Act would only confer the right to steady timber volumes *absent changes that comply with Forest Act procedures*. That right is not injured by Defendants' alleged violation of the Environmental Act. Rather, Plaintiffs have a cause of action under the Forest Act for any such violations.

2. The Court finds no damage to Plaintiffs' alleged "environmental" interests. Plaintiffs assert an environmental interest "in ensuring stable [woodpecker] populations and scientifically defensible, consistent [woodpecker] management strategies ... [because s]ound [woodpecker] management today will prevent greater conflicts between [woodpecker] maintenance and timber harvesting in the future." Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss, pg. 7. This is akin to saying that Plaintiffs desire to protect the woodpecker in order to get it off the endangered species list so that they can destroy its environment. To make the argument is to admit the lack of a genuine environmental interest. This alleged "environmental" interest is not a cognizable injury under Article III.

3. The District Court opinion in *National Wildlife* states that prudential standing is not required for suits filed under the Species Act. The Fifth Circuit, in reversing the District Court, assumed that standing existed without commenting on the prudential standing question. However, because the District Court found that prudential standing existed under the Administrative Procedure Act, the appellate version of *National Wildlife* does not establish a rule in this circuit that forbids courts from applying prudential

Species Act on several occasions. *See, e.g., Humane Society of the United States v. Hodel*, 840 F.2d 45, 61 (D.C.Cir.1988); *National Audubon Society v. Hester*, 801 F.2d 405, 407 n. 2 (D.C.Cir.1986); *but see, Competitive Enterprise Institute*, 901 F.2d at 118 (holding that a provision of the Energy Policy and Conservation Act of 1975 that allowed suit by "any person who may be adversely affected by" certain standards demonstrated a Congressional intent to eliminate prudential standing limitations). Likewise, the Eighth Circuit in *Defenders* and the District Court in *National Wildlife* both recognized that when Species Act violations are governed by the Administrative Procedure Act prudential standing limitations apply [4].

Supreme Court precedent in this area is confusing. On the one hand, *Bread Political Action Committee v. F.E.C.*, 455 U.S. 577, 584–84, 102 S.Ct. 1235, 1239–40, 71 L.Ed.2d 432 (1982) seems to indicate that standing limitations will be applied absent a clearly expressed Congressional direction to the contrary. On the other hand, *Clarke v. Securities Industry Association*, 479 U.S. 388, 399, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987) "recognize[s] the presumption in favor of judicial review of agency action", and requires Congress' intent to preclude judicial review be "fairly discernible in the statutory scheme." Without attempting to resolve this apparent controversy, the court simply refers to authority holding that, even under the higher *Bread* standard, language such as that in the citizen suit provision of the Species Act "clearly removes the judicial authority to create prudential barriers by granting review of agency action to" any person. *Center for Auto Safety v. N.H.T.S.A.*, 793 F.2d 1322, 1337 (D.C.Cir.1986); *see also, Defenders*, 851 F.2d at 1039; Fletcher, *The Structure of Standing*, 98 Yale L.J. 221, 255–56 (1988). Thus, Plaintiffs have standing to assert any existing informational and participational claims under the Species Act.

Resolution of whether Plaintiffs qualify as "applicants" such that they enjoy the informational rights described at 16 U.S.C. § 1536(b)(3) and (4) and the participational rights described at 50 C.F.R. § 402(14)(d) requires reference to facts and/or documents outside the complaint. Likewise, resolution of Defendants' third [5], fifth [6], and sixth [7] grounds for dismissal also requires reference to facts and/or documents outside the complaint. "Whether [a party] fail[s] to state a claim for which relief can be granted must be ascertained solely from the face of the complaint." *Marine Coatings of Alabama, Inc. v. United States*, 792 F.2d 1565, 1567 (11th Cir.1986). If the court considers matters outside the complaint, the motion is constructively converted to one for summary judgment. *Id.* "[B]efore a motion to dismiss may be converted to one for summary judgment the court must first communicate its intention to the parties to so treat the motion and then allow the parties ten days to submit any relevant evidence and argument in support or opposition to the merits." *Id.* at 1568. The parties are therefore directed to submit any relevant evidence and argument within ten (10) days of the date of entry of this order. The Clerk of the Court will resubmit this file after that time for summary judgment consideration of the notice, waiver, and exhaustion issues, as well as the issue of whether Plaintiffs are "ap-

---

standing requirements to suits filed under the Species Act.

**4.** Plaintiffs suing under the Administrative Procedure Act must allege "injury ... to an interest 'arguably within the zone of interests to be protected or regulated' by the statutes that the agencies were claimed to have violated", *Sierra Club v. Morton*, 405 U.S. 727, 733, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636 (1972).

**5.** Defendants' third ground for dismissal is that Plaintiffs may not raise claims regarding Defen-

dants' alleged failure to follow the Woodpecker Handbook because of Plaintiffs' failure to provide notice of such violations.

**6.** Defendants' fifth ground for dismissal is that Plaintiffs, by voluntarily modifying their contracts after the Forest Service adopted its ¾ mile policy, waived their rights to sue over this policy.

**7.** Defendants' sixth ground for dismissal is that Plaintiffs failed to exhaust their administrative remedies with regard to several of their claims.

plicants" within the meaning of the Species Act.

■ Defendants' final ground for dismissal or a stay is that Defendants will, by the time this order is entered or shortly thereafter, have adopted new woodpecker guidelines that will moot this controversy. At best, this would be grounds to stay the case. Certainly this case is not now moot because Defendants may at some unidentified time in the future adopt a policy that Plaintiffs will not find objectionable. Nor should the court stay this case until Defendants' new policy is announced. "[V]oluntary cessation of allegedly illegal conduct ... does not make the case moot." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). The case becomes moot only if Defendants fulfill their heavy burden of establishing that the alleged violation is reasonably likely not to recur and the events that are alleged to have made the action moot have "completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). Given that this case concerns an alleged deprivation of informational and participational rights, it would appear that no action on the part of Defendants could eradicate the effects of the deprivation. However, even if the effects could be eradicated, Plaintiffs allege that the new interim guidelines suffer many of the same procedural defects as the previous guidelines. Thus, Defendants have not met their burden of establishing that Plaintiffs will not, in the future, be denied informational and participational interests.

### The Motion to Intervene

The Sierra Club's motion to intervene is deferred until the Forest Service's new woodpecker policy is adopted. This action began as a case that required the balancing of competing interests in a way that would avoid the extinction of the red cockaded woodpecker. The Sierra Club's interest in the well being of the red cockaded woodpecker thus provided common questions of law and fact that could be fairly resolved in conjunction with this lawsuit. At this point in the litigation, however, the case has been narrowed to focus on the alleged denial of Plaintiffs' informational and participational rights under the Forest Act and the Species Act. As such, there is the possibility that the Sierra Club's intervention will raise extraneous issues and cause undue delay or prejudice. The Sierra Club's motion for a stay hints at such by requesting a stay until Defendants establish a new woodpecker policy, at which time "[i]t is probable that Sierra Club will have new claims against the Forest Service." It is unclear whether these "new claims" will "unduly delay or prejudice the adjudication of the rights of the original parties." Fed.R. Civ.P. 24(b). Thus, the court defers ruling on the Sierra Club's motion to intervene until the Forest Service adopts a new woodpecker policy. The Sierra Club is directed to inform the court when that time has passed.

### The Motion for a Protective Order

Defendants also move for a protective order prohibiting Plaintiffs' discovery. Defendants assert that because this court must review the administrative record under an arbitrary and capricious standard, no discovery is permitted, and particularly no discovery is permitted that focuses on issues outside the administrative record.

Plaintiffs respond that their discovery requests are not burdensome, and are only directed at simplifying the issues and insuring that the complete administrative record is filed. Plaintiffs assert that Defendants are not immune from discovery, and that discovery aimed at ascertaining whether the complete administrative record has been filed is appropriate.

Defendants reply that discovery aimed at ascertaining whether the complete administrative record has been filed is improper until after the record has been filed. According to Defendants, only after the record is filed and the court has determined that it is insufficient may action be taken to supplement the record. Defendants further assert that the "contemporaneous construction" exception to the rule that discovery is not to be had in administrative

review cases does not apply because Plaintiffs' discovery is directed at the application of a regulation, rather than the construction of the regulation.

 The general rule in administrative review cases is that, absent certain exceptions, discovery is not permitted. *Public Power Council v. Johnson*, 674 F.2d 791, 794 (9th Cir.1982) (enumerating certain exceptions to "the general rule that agency actions are to be judged on the agency record alone, without discovery."). *See also, Joseph G. Moretti, Inc. v. Hoffman*, 526 F.2d 1311, 1312 (5th Cir.1976). Plaintiffs' requested discovery seeks to elicit the complete administrative record and the basis for certain decisions that undoubtedly will be reflected in that record. Until the administrative record has been submitted, the discovery sought by Plaintiffs is premature and possibly duplicative.

Accordingly, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART, and the parties are DIRECTED to submit, within ten (10) days of the date of entry of this order, any evidence and/or argument they deem necessary for resolution of the issues to be decided on summary judgment. The Clerk of the Court is DIRECTED to resubmit the file after that time. Defendants' motion for a stay is DENIED. The Sierra Club's motion to intervene is DEFERRED, and the Sierra Club is DIRECTED to inform the court in writing, within twenty (20) days of the Forest Service's adoption of a new woodpecker policy, of any new claims that it may have. Defendants' motion for a protective order is GRANTED, with leave for Plaintiffs to move for specific discovery should such be warranted after submission of the administrative record. Plaintiffs' motion for leave to file a supplemental brief is DENIED and

Defendants' motion to reply to the supplemental brief is DENIED [8].

SO ORDERED.

---

8. The court directs the parties' attention to Local Rule 220–1(b)(2), which states that while "a reply by the movant shall be permitted, it shall not be necessary for the movant to file a reply as a routine practice." The Rule also directs that "[n]o further briefs may be filed by the parties, except upon order of the Court." Thus, while a reply is not favored, the movant is permitted to file a reply when it deems one to be necessary. By way of contrast, more than a party's sense of necessity is required before a surreply or further brief is permitted. In the instant case, the facts and law are not so unusually complicated that further briefing is required for clarification.