[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16461
Non-Argument Calendar
_____

D.C. Docket No. 8:14-cv-01527-VMC-EAJ

APPLE GLEN INVESTORS, L.P.,
an Indiana Limited Partnership,

                                                          Plaintiff-Appellee,

versus

EXPRESS SCRIPTS, INC.,
f.k.a. Merck-Medco Managed Care, LLC,

                                                          Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 3, 2017)

Before MARCUS, JULIE CARNES, and JILL PRYOR, Circuit Judges.

PER CURIAM:

After a five-day bench trial, the district court entered final judgment in favor of Apple Glen Investors, L.P. ("Apple Glen") in a suit against Express Scripts, Inc. ("ESI"), Apple Glen's former tenant, seeking damages for breach of contract. In this diversity action, Apple Glen alleged that ESI breached a commercial property lease by failing to put, keep, maintain, and return the property and its equipment in the condition required by the lease. On appeal, ESI argues that the district court erred by: (1) ruling that Apple Glen did not split its cause of action; and (2) relying on extrinsic evidence and failing to read the contract as a whole to determine the condition required by the unambiguous lease. After careful review, we affirm.

In 1999, the parties' predecessors in interest entered into a lease agreement, which specified in Paragraph 12(a) that:

> Tenant shall at all times, at Tenant's sole cost and expense, put, keep and maintain the Leased Premises (including, without limitation, the parking areas, roof, footings, foundations, interior and exterior walls and structural components of the Leased Premises) and the Equipment in a first class condition and order of repair, except for ordinary wear and tear, and shall promptly make all repairs and replacements of every kind and nature, whether foreseen or unforeseen, which may be required to be made upon or in connection with the Leased Premises in order to keep and maintain the Leased Premises in the order and condition required by this Paragraph 12(a). . . . Tenant shall, in all events make all repairs for which it is responsible hereunder promptly, and all repairs shall be in good, proper and workmanlike manner.

The lease also required in Paragraph 12(d) that:

> Tenant shall from time to time replace with other operational equipment or parts (the "Replacement Equipment") any of the Equipment (the "Replaced Equipment") which shall have become

2

worn out or unusable for the purpose for which it is intended, or been lost, stolen, damaged or destroyed as provided in Paragraph 15.

The lease emphasized that the landlord had no obligations, and the tenant was responsible for all operating expenses and capital expenditures.

The lease term expired in 2010, and a dispute developed regarding potential renewal of the lease. In November 2009, Apple Glen sued ESI, then known as Medco, in Florida state court concerning its rent obligations when the lease was renewed or expired. It amended the complaint in October 2012 to allege that Medco breached Paragraph 12 of the lease by failing to restore the property's roof to the condition required by the lease. Apple Glen sought reimbursement for a change order to install a two-ply roof after Medco contracted with a roofer to install a one-ply roof and refused to pay for a two-ply roof. Following a January 2014 trial, the state court entered judgment in favor of Apple Glen for holdover rent and reimbursement. The judgment was upheld on appeal. ESI vacated the property on March 31, 2014. Apple Glen filed the instant action on May 27, 2014, alleging that ESI breached Paragraph 12 of the lease based on 26 deficiencies in the condition of the vacated property and equipment.

After a bench trial, we review the district court's factual findings for clear error. Crystal Entm't & Filmworks, Inc. v. Jurado, 643 F.3d 1313, 1319 (11th Cir. 2011). "Under the clear error standard, we may reverse the district court's findings of fact if, after viewing all the evidence, we are left with the definite and firm

3

conviction that a mistake has been committed." Id. at 1319–20 (quotations omitted). "We review conclusions of law made by a district judge following a bench trial de novo." Renteria-Marin v. Ag-Mart Produce, Inc., 537 F.3d 1321, 1324 (11th Cir. 2008).

The district court did not err in ruling that Apple Glen did not improperly split its cause of action between its first lawsuit and the instant lawsuit. "The rule against splitting causes of action is an aspect of the doctrine of res judicata." Tyson v. Viacom, Inc., 890 So. 2d 1205, 1210 (Fla. Dist. Ct. App. 2005) (quotations omitted). When we are asked to give res judicata effect to a state court judgment, we apply the res judicata law of the "state whose decision is set up as a bar to further litigation," which is Florida. Kizzire v. Baptist Health Sys., Inc., 441 F.3d 1306, 1308 (11th Cir. 2006). Under Florida law, for res judicata to bar relitigation of a claim decided in a prior final adjudication, there must be: (1) identity in the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality or capacity of the person for or against whom the claim is made. W&W Lumber of Palm Beach, Inc. v. Town & Country Builders, Inc., 35 So. 3d 79, 83 (Fla. Dist. Ct. App. 2010).

Generally, "[i]dentity of the causes of action is established where the facts which are required to maintain both actions are identical." Gold v. Bankier, 840 So. 2d 395, 397 (Fla. Dist. Ct. App. 2003) (quotation omitted). Florida courts have

also applied a transactional test to determine identity of the causes of action. See

Leahy v. Batmasian, 960 So. 2d 14, 17 (Fla. Dist. Ct. App. 2007). Under the

transactional test, there is an identity of the causes of action not only as to every

question decided in an earlier lawsuit, but "also as to every other matter which the

parties might have litigated and had determined, within the issues as [framed] by

the pleadings or as incident to or essentially connected with the subject-matter" of

the first litigation. Hay v. Salisbury, 109 So. 617, 621 (Fla. 1926) (quotation

omitted). "This rule applies to every question falling within the purview of the

original action, both in respect to matters of claim and defense, which could have

been presented by the exercise of due diligence." Id. (quotation omitted).

A new claim is not barred by the rule against splitting a cause of action "if

the underlying cause of action had not accrued at the time of filing the previous

lawsuit." Gilbert v. Fla. Power & Light Co., 981 So. 2d 609, 614 (Fla. Dist. Ct.

App. 2008). Moreover, Florida courts have recognized that res judicata does not

bar a second breach-of-contract action based on a subsequent breach. See U.S.

Project Mgmt., Inc. v. Parc Royale E. Dev., Inc., 861 So. 2d 74, 76–77 (Fla. Dist.

Ct. App. 2003).

Here, the facts necessary to prove Apple Glen's previous and instant breach-

of-contract claims are not identical. Gold, 840 So. 2d at 397. Although both

claims require proof of the same elements, Apple Glen alleged different facts

concerning how the tenants breached the lease in each case.   The first case concerned Medco's installation of a sub-standard roof; the instant case concerned 26 deficiencies, including the conditions of asphalt paving and sidewalks, landscaping and irrigation, and security systems, which resulted from failures to maintain and replace the property and equipment over time or from removal of certain equipment from the premises when ESI vacated the property.

Moreover, ESI failed to show that the breaches raised in the instant case could have been raised at the time the first lawsuit was filed.  Hay, 109 So. at 621. The district court found that ESI did not present any evidence proving that Apple Glen's current claim had accrued when it filed its prior complaint to recover for the roof replacement.   ESI argues that the district court concluded that a 2009 letter from Apple Glen gave ESI proper notice of the deficiencies claimed in the instant case, and, therefore, the letter proves that the instant claim had accrued as early as 2009.  However, the district court expressly found that the 2009 letter "reminded" ESI of its contractual obligation to maintain the premises in a "first class condition," based on ESI's broker's report that the building was "aged" and the equipment was "obsolete."   The 2009 letter did not specify what deficiencies existed at that time.  Then, in 2013, when Apple Glen learned of the possibility that ESI might vacate the leased premises on short notice, it retained CMK Design Studio, LLC to inspect the premises, and a CMK report detailed aspects of the

6

property that were not being appropriately maintained.  In 2014 (after the trial in the first lawsuit), Apple Glen sent ESI a letter and a copy of the CMK report requesting that ESI contact Apple Glen to discuss problems identified in the CMK report, but ESI never responded.  Thus, the 2009 letter did not indicate that Apple Glen was aware of the specific problems that CMK identified in 2014, nor did it suggest that Apple Glen was aware that ESI would ignore the problems and breach the lease -- even though, together, these letters gave ESI notice of the premises' deficiencies.  On this record, we cannot say that the district court's finding that ESI failed to prove that the current claim had accrued was clearly erroneous.  Crystal Entm't, 643 F.3d at 1319–20.  Moreover, because the claim had not accrued, Apple Glen could not have raised it in the previous complaint, and the rule against splitting a cause of action did not apply.  Hay, 109 So. at 621.

ESI argues that our decision in Capitol Funds, Inc. v. Arlen Realty, Inc., 755 F.2d 1544 (11th Cir. 1985), is controlling, but we disagree.  In Arlen Realty, we applied Georgia law to determine that res judicata barred a landlord's counterclaim for breach of the duty to repair.  Id. at 1546–47.  The landlord raised a nearly identical claim in Georgia state court one year before, and Georgia law required the landlord to rebut a presumption that the facts had not changed and events had not occurred since the previous lawsuit.  Id. at 1545–47.  Because the landlord failed to rebut the presumption, we determined that the district court did not err in

concluding that he could have raised his second claim in the first lawsuit. Id. at 1547. But Florida law does not include that presumption, and, as discussed, the district court did not clearly err in finding that ESI failed to prove that Apple Glen could have raised the current deficiencies in its first lawsuit. Accordingly, the district court properly determined that Apple Glen's current lawsuit was not barred by the doctrine of res judicata or the rule against splitting a cause of action.

We are also unpersuaded by ESI's argument that the district court erred by relying on extrinsic evidence and failing to interpret the contract as a whole. "It is well settled that the actual language used in the contract is the best evidence of the intent of the parties and, thus, the plain meaning of that language controls." Rose v. M/V "Gulf Stream Falcon", 186 F.3d 1345, 1350 (11th Cir. 1999) (citing Green v. Life & Health of Am., 704 So. 2d 1386, 1391 (Fla. 1998)). Florida law allows courts to consider extrinsic evidence of course of performance, course of dealing, or usage of trade to explain or supplement a contract's terms, even when those terms are not ambiguous, as long as the evidence is not used to contradict the contract's terms. Fla. Stat. § 672.202 & cmt. 1(c). Florida courts have also recognized that "evidence to show the meaning of technical terms, and the like, is not regarded as an exception to the parol evidence rule, because it does not contradict or vary the written instrument, but simply places the court in the position of the parties when they made the contract . . . ." Se. Banks Tr. Co., N.A.

8

v. Higginbotham Chevrolet-Oldsmobile, Inc., 445 So. 2d 347, 348 (Fla. Dist. Ct. App. 1984) (quotations and alterations omitted).  Florida law requires that we look to the contract as a whole.  See Jones v. Warmack, 967 So. 2d 400, 402 (Fla. Dist. Ct. App. 2007).

Here, expert testimony was presented to explain whether the named conditions breached the lease's requirements that the premises and equipment remain in "first class condition," excepting "ordinary wear and tear," and that the tenant replace "worn out or unusable" equipment.  Apple Glen's expert presented industry standards to explain his methodology for determining whether the named conditions met the lease's requirements.  The district court noted that its interpretation of the contract's terms based on the testimony presented was consistent with the dictionary definitions of the terms.  Thus, the court permissibly allowed extrinsic evidence to explain the contract's terms, and the evidence did not contradict them.  See Fla. Stat. § 672.202 & cmt. 1(c); Se. Banks Tr. Co., 445 So.2d at 348.  The district court also looked to the contract as a whole because it read Paragraphs 12(a) and 12(d) in concert when it interpreted ESI's obligations under the contract.  Jones, 967 So.2d at 402.

Accordingly, we affirm the judgment of the district court.

**AFFIRMED.**

9